**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

KENT TAYLOR,           )
                                        )
           Petitioner,       )
                                        )
     v.                     )      No. 4:15CV1300 RLW
                                        )
CINDY GRIFFITH,[1]       )
                                        )
           Respondent.    )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Kent Taylor for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254. The Petition is fully briefed and ready for disposition.

### I. Procedural History

Petitioner Kent Taylor is currently incarcerated at the Potosi Correction Center ("PCC")

located in Mineral Point, Missouri pursuant to the judgment and sentence of the Circuit Court of

St. Louis County, Missouri. (Resp't's Ex. B pp. 119-23) On March 30, 2011, a jury found

Petitioner guilty of murder in the first degree, assault in the first degree, and two counts of armed

criminal action. (Resp't's Ex. B pp. 110, 113-115) On May 11, 2011, the court sentenced him to

concurrent terms of life imprisonment without the possibility of parole on the murder conviction

and fifteen years on each of the other charges. (Resp't's Ex. B pp. 119-23) Petitioner filed a

direct appeal, and on March 6, 2012, the Missouri Court of Appeals affirmed the judgment of the

trial court. (Resp't's Ex. E) Petitioner then filed a *pro se* Motion to Vacate, Set Aside, or

Correct Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 on June 4, 2012.

---

[1] The Court notes that the warden position is currently vacant at the Potosi Correction Center, where Petitioner is housed. Pending a new warden, the Court will continue to name Cindy Griffith, the prior warden, as the named respondent.

(Resp't's Ex. F pp. 3-22) Appointed counsel filed an amended Rule 29.15 motion and request for evidentiary hearing on September 4, 2012. (*Id.* at pp. 25-37) The motion court denied the request for a hearing, and on April 30, 2013, the court denied Petitioner's motion for post-conviction relief. (*Id.* at pp. 42-51) The Missouri Court of Appeals affirmed the judgment of the motion court in a decision dated August 26, 2014. (Resp't's Ex. I) On August 21, 2015, Petitioner filed the present petition for habeas relief in federal court. (ECF No. 1) He filed an amended petition on April 8, 2016. (ECF No. 11)

## II. Factual Background[2]

On September 22, 2009, Petitioner Kent Taylor went to the Wellston Market located in the City of St. Louis after hearing a rumor that Byron Robinson ("Victim"), his cousin Keith Adams ("Adams"), and a woman planned to kill Petitioner that day. Adams had previously hung out with Petitioner's nephew, who had recently been killed. Upon seeing Adams at the market, Petitioner decided to talk to Adams. Adams told Petitioner that he had no problem with Petitioner, but then a loud argument ensued. As Petitioner began walking away, he turned and pulled out two guns. Adams told Defendant, "I ain't running, I ain't going nowhere. If that's what you came to do, do it." Defendant responded, "Take this," and shot the Victim, who was standing nearby. Neither Adams nor the Victim was carrying a weapon. Adams ran away, and Defendant chased him to a car wash, continuing to fire one of the guns at Adams. Defendant eventually stopped chasing Adams and returned to the market, got in his pickup truck, and drove away.

Police officers found the Victim under an SUV, lying face down in a pool of blood, bleeding from the abdomen, and barely responsive. The Victim later died at the hospital.

---

[2] The Court sets forth the facts as stated in the Missouri Court of Appeals' Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25(b). (Resp't's Ex. E)

During the autopsy, the medical examiner recovered the bullet from the Victim's body. Petitioner turned himself in to the police later that day, along with a semi-automatic pistol, holster, and magazine. Petitioner did not have a second gun with him. Ballistics testing showed that the bullet recovered from the Victim's body matched the pistol provided by Petitioner. During the investigation, Petitioner's brother gave a revolver to the police.

At trial, Adams testified at length. In addition, video surveillance cameras at the market recorded the shootings, and the tape was played for the jury. At the time of the shootings, the market and parking lot were crowded with customers, and three eye witnesses corroborated Adams' testimony and the events depicted on the video surveillance tape. Defendant asserted a claim of self-defense. However, the jury convicted the Defendant as charged.

### III. Petitioner's Claims

In his First Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, Petitioner raises seven claims for federal habeas relief. Petitioner argues in Claim 1 that trial counsel was ineffective for failing to prepare and submit a self-defense instruction to the jury. In Claim 2, Petitioner contends that trial counsel was ineffective for failing to object to and submit a correct instruction on second degree murder. Third, Petitioner asserts that appellate counsel was ineffective for failing to brief as plain error the trial court's failure to submit a self-defense instruction and modify the second degree murder instruction. Petitioner's Fourth Claim alleges prosecutorial misconduct for failure to disclose material, exculpatory evidence about Adams' criminal record and a video tape of the shooting. In Claim 5, Petitioner contends that trial counsel was ineffective for conceding in closing argument that Petitioner was the initial aggressor. Petitioner argues in Claim 6 that the evidence was insufficient to convict him of first

3

degree murder and armed criminal action. Finally, in Claim 7, Petitioner asserts that the prosecution made improper comments about reasonable doubt and deliberation during *voir dire.*

## IV. Legal Standards

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers* 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956

4

(8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

To preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citation omitted). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* A federal court will consider a defaulted habeas claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.*

## V. Discussion

In the instant case, Respondent contends that only two of Petitioner's claims were properly presented to the Missouri courts in his direct appeal and post-conviction proceedings. Respondent argues that the remaining five claims are barred from federal habeas review because they are procedurally defaulted. Further, Respondent asserts that the claims are without merit.

## A. Claim 1

Petitioner first claims that trial counsel was ineffective for failing to prepare and submit a self-defense instruction that was supported by the evidence at trial. Petitioner contends that if counsel had submitted such an instruction, there is a reasonable probability that the outcome of the trial would have been different. Respondent asserts that Petitioner did raise this claim in his motion for post-conviction relief and on post-conviction appeal with respect to the Victim.

5

However, Petitioner did not raise the claim with regard to Adams, and the Respondent maintains

that any claim pertaining to Adams and a self-defense instruction is procedurally barred.

The Missouri Court of Appeals addressed Petitioner's claim that counsel was ineffective

for failing to request a self-defense instruction on the first degree murder charge and associate

armed criminal action charge involving the Victim.[3] The Missouri Court of Appeals concluded

that counsel was not ineffective for failing to request or offer a self-defense instruction because

the evidence did not support such instruction. The Missouri Court of Appeals specifically found:

At trial, Adams and three other eye-witnesses testified. The jury viewed
the video surveillance tape from the Wellston Market that had recorded the
shootings. The Wellston Market and parking lot had been crowded with
customers at the time of the shootings, and the testimony of the eye witnesses
claimed to be consistent with the events depicted on the video surveillance tape.
Movant also testified at trial. Movant testified that, during the confrontation with
Victim and Adams, Adams had threatened to kill Movant and his family and that
Adams said he had a gun. Movant testified that he turned to walk away from the
confrontation, then turned around, raised his guns, and shot Victim because he
thought Victim had a gun. Movant testified that he had aimed one of the guns at
Victim when he shot Victim and that he had chased Adams and continued to fire
one of the guns. Movant testified that he did these acts because he was enraged,
mad, and upset and wanted to kill Adams because Movant believed Adams had
killed Movant's nephew.

At the instruction conference during trial, Counsel did not request or offer
a self-defense instruction. During closing arguments, Counsel argued that Movant
had believed Victim had a gun at the time of the confrontation between Movant,
Victim, and Adams. Counsel also argued that Movant was guilty of voluntary
manslaughter because "[t]here was no cool reflection." Counsel then stated, in
part:

There was some talk about self[-]defense. .There's been no
claim for self-defense. We recognize in the State of Missouri if
you're the initial aggressor that you're not – you don't have a right
to self[-]defense. But you do have a right, under this – under
instruction that the Court is going [to] give you, to find that what

---

[3] The state court noted that Petitioner did not assert that he shot at Adams in self-defense and did
not pursue an argument that his trial attorney was ineffective for failing to seek a self-defense
instruction on the charges pertaining to Adams. (Resp't's Ex. I p. 5 n.2) Thus, the Court finds
the argument pertaining to Adams is procedurally defaulted.

[Movant] did was the result of adequate provocation. Not self[-]defense. Self[-]defense is a complete bar for your action. Sudden passion from adequate cause is not a complete bar, it just mitigates the charge and makes it a lesser charge.

. . .

This is a case of Voluntary Manslaughter, and it's a case of Assault Second, and two Armed Criminal Actions.

. . .

In this case, clearly, the record refuted Movant's claim. First, we cannot say that Counsel's assistance fell outside the wide range of professional competent assistance or that Counsel's trial strategy was unreasonable. See McIntosh, 413 S.W.3d at 324. In light of the evidence in the record of the underlying case, Movant was not entitled to a self-defense instruction. Moreover, Counsel's decision not to request a self-defense instruction was sound trial strategy given that the defense theory was that Movant had adequate cause for shooting Victim and at Adams because Movant had been provoked– not that Movant had acted in self-defense. In fact, Counsel presented Movant's testimony regarding the events surrounding the crimes in an effort to establish the defense theory was adequate cause based on provocation.

Furthermore, Movant was not prejudiced by the absence of a self-defense instruction given the overwhelming evidence of Movant's guilt of the crimes charged. The evidence did not establish that Movant was either defending himself or had adequate cause to shoot Victim or to shoot at Adams. "'Adequate cause' is defined as cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Lopez v. State, 300 S.W.3d 542, 548 (Mo. App. S.D. 2009), quoting Section 565.002(1). "For adequate cause to exist, a sudden, unexpected encounter or provocation must excite an uncontrolled passion, be it rage, anger, or terror." Lopez, 300 S.W.3d at 550, quoting State v. Jacoway, 11 S.W3d 793, 798 (Mo. App. W.D. 1999). "[I]t 'is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent, and therefore the crime is not murder, but manslaughter.'" Lopez, 300 S.W.3d at 550, citing State v. Mudgett, 531 S.W.2d 275, 280 (Mo. banc 1975).

The evidence at trial established that Movant confronted Adams and Victim at the Wellston Market; Adams and Victim did not confront Movant. Movant went to the Wellston Market with two guns; Victim and Adams had no weapons in their possession. Even though Adams told Movant that Adams "ain't got no problems" with Movant, Movant pursued a conversation with Adams until the two men became engaged in a loud argument. Movant started to walk away

but renewed the confrontation by turning and pulling out his two guns. Adams said that he would not run and that if Movant had intended to shoot Adams, he should do it. Eyewitnesses testified that Movant said, "Take this," then shot Victim in the left side of the back and chased Adams, firing one of the guns at Adams as they ran. Eyewitnesses indicated that the video surveillance tape corroborated their testimony. Given all this evidence, the reasonable inference was that Movant went looking for Victim and Adams and intended to shoot them, not that Movant was defending himself when he shot and killed Victim then chased and shot at Adams.

Accordingly, Counsel was not ineffective for failing to request or to offer a self-defense instruction because the evidence did not support such an instruction. A self-defense instruction is not appropriate if the Movant renewed or continued a confrontation because behavior of that sort is inconsistent with the requirement that Movant avoid the danger and the need to take a life. State v. Chambers, 671 S.W.2d 781, 783 (Mo. banc 1984). Even if, arguendo, the instruction would have been submitted, there was no reasonable probability that the outcome of the trial would have been different given the evidence. We cannot conclude Counsel was ineffective by not requesting a self-defense instruction given the strategic decisions made and the substantial evidence presented. The motion court did not err in denying Movant's PCR Motion. Point denied.

(Resp't's Ex. I pp. 7-10)

To establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. *Id.* at 694; *Bucklew*, 436 F.3d at 1016. In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." *Bucklew*, 436 F.3d at 1016 (citation omitted). The question of whether counsel's performance prejudiced the trial need not be addressed if counsel's performance was not deficient; conversely, a court need not reach the question of deficient performance where a petitioner has failed to

8

show prejudice. *Green v. Steele*, No. 4:04-CV-0610 CEJ TCM, 2007 WL 2199644, at *10 (E.D. Mo. July 27, 2007) (citations omitted).

As previously stated, habeas relief may not be granted unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). "Therefore, we will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in *Strickland*." *Id.*; *see also Bucklew*, 436 F.3d at 1016 (where state court correctly identifies *Strickland* as the controlling authority, federal courts "address whether the state court unreasonably applied that precedent and whether the state court unreasonably determined the facts in light of the evidence presented.").

Here, Petitioner has failed to demonstrate that trial counsel's performance was deficient and prejudiced the defense. While Petitioner contends that Adams indicated he had a "ratchet" and would kill Petitioner's family, the record shows that Petitioner was heated, mad, upset, enraged, and believed that Adams killed Petitioner's nephew. (Resp't's Ex. A Vol. III pp. 450-57) Further, although Petitioner testified at trial that he believed the Victim grabbed a gun, the video tape demonstrated that the Victim was running away from Petitioner when Petitioner shot him. (*Id.* at pp. 455-56, 496-99, 506-07) In addition, while Petitioner asserts that he lowered his guns and tried to leave, his own testimony shows that he lowered the guns, raised them again, and purposefully shot the guns. (*Id.* at pp. 510-513)

To be entitled to use force in self-defense, "a defendant must present substantial evidence that, (1) he did not provoke or was not the aggressor; (2) he had reasonable grounds for believing

he was faced with immediate danger of serious bodily harm; (3) he did not use more force than was reasonably necessary; and (4) he did everything in his power and consistent with his own safety to avoid the danger." *State v. Whipple*, 501 S.W.3d 507, 517 (Mo. Ct. App. 2016) Here, however, Petitioner's attorney correctly stated that Petitioner was not claiming self-defense because if a defendant is the initial aggressor, he or she does not have the right to claim self-defense. Instead, counsel argued that there was adequate provocation and sudden passion. (Resp't's Ex. A Vol. III p. 592)

The Court finds that counsel exercised reasonable trial strategy such that he did not render ineffective assistance of counsel. Counsel correctly determined that as the aggressor, Petitioner would not be able to claim self-defense. This is especially true where, as here, the Missouri Court of Appeals later determined that a self-defense instruction was not appropriate where the Petitioner "renewed or continued a confrontation because behavior of that sort is inconsistent with the requirement that [Petitioner] avoid the danger and the need to take a life." (Resp't's Ex. I p. 11) "An objectively reasonable choice by counsel not to submit an instruction does not constitute ineffective assistance of counsel." *McCrady v. State,* 461 S.W.3d 443, 449-50 (Mo. Ct. App. 2015) (citation omitted); *see also McNeal v. State*, 500 S.W.3d 841, 844 (Mo. 2016).

"Based on the foregoing and the other evidence of record, and considering defense counsel's conduct based on his perspective at the time, [the Court] find[s] that the strong presumption that defense counsel's performance 'falls within the wide range of reasonable professional assistance' is not overcome." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). Because counsel's performance was not deficient, the Court need not consider the prejudice prong of *Strickland. Id.* Thus, the Court finds that

10

Petitioner has failed to demonstrate that trial counsel was ineffective, and this ground is denied on the merits.

## B. Claim 6

For Petitioner's sixth claim, he argues that the evidence was insufficient to convict him of first degree murder. Specifically, Petitioner claims that the State failed to prove the mental element of deliberation that is required to convict a defendant of first degree murder. Petitioner contends that the homicide occurred in the heat of passion and after provocation, not after cool reflection.

Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals found:

> When reviewing a challenge to the sufficiency of the evidence to support the judgment, we consider all of the evidence and reasonable inferences in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. Cole, 71 S.W.3d at 169. Furthermore, our review is limited to determining whether there was sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. State v. Orton, 178 S.W.3d 589,592 (Mo. App. E.D. 2005[)].

> A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter. Section 565.020.1. "Deliberation" means cool reflection for any length of time no matter how brief. Section 565.002(3). "Deliberation" and may be inferred from the fact that a defendant had the opportunity to terminate an attack after it began. Cole, 71 S.W.3d at 169. "It is enough if the evidence shows that the defendant considered taking another's life in a deliberate state of mind." State v. Attwood, 294 S.W.3d 144, 145 (Mo. App. S.D. 2009). "The element of deliberation may be proven from the circumstances surrounding the crime." State v. Tisius, 92 S.W.3d 751,764 (Mo. banc 2002). "Disposing of evidence and flight can support the inference of deliberation." Tisius, 92 S.W.3d at 764.

> Here, there was sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that Defendant deliberated before shooting Victim and, thus, was guilty of first-degree murder. Both the State and Defendant presented evidence establishing that Defendant turned and started to walk away from Adams after the two men had engaged in a loud argument. Defendant admitted that he was angry with Adams and pointed his gun at Victim and Adams. Before shooting Victim, Defendant said, "Take this," implying that Defendant had given thought to his actions before pulling the trigger. Defendant

11

then chased Adams while continuing to shoot at Adams. Significantly, Defendant testified that his nephew had recently been killed, that he thought Adams had killed his nephew, and that Defendant believed Adams was planning to kill Defendant. Based on the circumstances surrounding the murder, a reasonable juror could have inferred that Defendant had planned to retaliate against Adams by killing Victim, who was Adams' cousin. A reasonable juror also could have inferred that Defendant planned to kill Adams before Adams had the opportunity to kill Defendant. Furthermore, the testimony of several eye witnesses and the surveillance video tape established that Defendant left the scene following the shootings, which indicated consciousness of guilt rather than self-defense. Finally, the evidence indicated that when Defendant turned himself in to police, Defendant lied about the guns he had. Defendant provided only one gun to police and stated that he did not have another. During the police investigation, however, Defendant's brother gave police Defendant's other gun, which Defendant had disposed of before turning himself in to police. Consequently, trial court did not err in accepting the jury's verdict and sentencing Defendant for first-degree murder. Point denied.

(Resp't's Ex. E pp. 9-10)

The Court finds that the decision of the Missouri Court of Appeals was not contrary to, nor an unreasonable application of clearly established federal law. In reviewing a sufficiency of the evidence claim, federal scope of review is extremely limited. *Sera v. Norris*, 400 F.3d 538, 543 (8th Cir. 2005) (citation omitted). The relevant question is not whether this Court believes the trial evidence established guilt beyond a reasonable doubt but "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").

As stated above, the evidence shows that Petitioner turned to walk away from Adams but then turned back around and pointed the guns at Adams and the Victim. Petitioner yelled "take this" before shooting the Victim, indicating some deliberation before pulling the trigger. Further,

Petitioner testified that he believed that Adams killed his nephew, and Petitioner planned to retaliate. Petitioner argues, however, that there was evidence demonstrating that the shooting was a result of heated passion and not cool deliberation.

Despite the existence of conflicting evidence, the trier of fact resolved the conflicts, weighed the evidence, and drew reasonable inferences from the facts. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.* (emphasis in original). In short, the Court finds that, in light of the evidence in the record, any rational trier of fact could have found beyond a reasonable doubt that Petitioner committed murder in the first degree. *Sera*, 400 F.3d at 543. Petitioner has failed to present clear and convincing evidence sufficient to overcome the presumption of correctness given to state court findings of fact. 28 U.S.C. § 2254(e)(1). Therefore, the Court finds that Petitioner's claim of insufficient evidence lacks merit.

## C. Claims 2, 3 and 5, Ineffective Assistance of Trial Counsel

With respect to Petitioner's remaining claims, Respondent contends that these are procedurally defaulted because Petitioner failed to properly present them in state court. Petitioner responds that he can overcome the procedural bar by establishing cause and prejudice due to ineffective assistance of counsel. Specific to ineffective assistance of counsel, in Claim 2, Petitioner asserts that trial counsel was ineffective for failing to object to and submit a correct instruction on second degree murder. Petitioner argues in Claim 3 that appellate counsel was ineffective for failing to raise as plain error the trial court's failure to *sua sponte* submit a self-defense instruction and failure to modify the sudden passion language in the second degree

13

murder instruction. In Claim 5, Petitioner contends that trial counsel was ineffective for conceding in closing argument that Petitioner was the initial aggressor.

Petitioner concedes that he did not properly raise these claims in state court. However, he contends that he can show cause and prejudice for the default under *Martinez* due to post-conviction counsel's failure to advance these claims in Petitioner's amended Rule 29. 15 motion. In *Martinez v. Ryan*, the United States Supreme Court held, "[i]nadequate assistance of counsel at an initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." 132 S. Ct. 1309, 1315 (2012). When, as in Missouri,

> a State requires a prisoner to raise an ineffective-assistance- of-trial-counsel claim
> in a collateral proceeding, a prisoner may establish cause for a default of an
> ineffective-assistance claim in two circumstances. The first is where the state
> courts did not appoint counsel in the initial-review collateral proceeding for a
> claim of ineffective assistance at trial. The second is where appointed counsel in
> the initial-review collateral proceeding, where the claim should have been raised,
> was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668,
> 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 1318. In addition, to overcome the procedural default, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Here, to overcome Petitioner's procedural default, Petitioner must establish that counsel on collateral review was ineffective under *Strickland* and that the ineffective assistance of trial counsel claim is meritorious. The Court finds that Petitioner is unable to demonstrate cause sufficient to overcome the default. As stated above, to establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's

14

conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689).

With respect to Claim 2, Petitioner claims that trial counsel was ineffective for failing to include in the second degree murder instruction language that defined sudden passion as provocation by the Victim, Adams, and others in the group, not solely the Victim. In Claim 5 he contends that trial counsel was ineffective for conceding during closing arguments that Petitioner was the initial aggressor. While Petitioner goes to great lengths to argue the merits of these claims, he makes no effort to demonstrate that post-conviction counsel's performance was deficient for failing to raise Claims 2 and 5 in his Rule 29.15 motion and that such failure prejudiced his defense. Instead, Petitioner argues that the Court should hold a *Martinez* hearing.

Nonetheless, the Court finds that Petitioner is unable to establish that post-conviction counsel's performance was deficient. In the Amended Rule 29.15 Motion, counsel argued that trial counsel was ineffective for failing to renew a *Batson* challenge; failing to request a self-defense instruction; and advising Petitioner to waive his rights under the Fifth and Sixth Amendments to the United States Constitution and make a statement to the police during the investigation. (Resp't's Ex. F pp. 25-37) "If, as with appellate counsel, 'one of [post-conviction] counsel's important duties is to focus on those arguments that are more likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue.'" *Sutton v. Wallace*, No. 4:13-CV-1285, 2016 WL 4720452, at \*10 (E.D. Mo. Sept. 9, 2016) (quoting *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006)). Only where stronger issues are ignored is a petitioner able to overcome the presumption of effective assistance of counsel. *Id.* (citations and quotations omitted).

The Court finds that post-conviction counsel's decision to focus on the three claims set forth above was reasonable trial strategy. Petitioner makes no attempt to argue that the defaulted claims are stronger than those advanced by post-conviction counsel. *See Muhammad v. Cassady*, No. 4:13-CV-1816-SPM, 2016 WL 4493682, at \*9 (E.D. Mo. Aug. 26, 2016) ("It appears that post-conviction counsel determined that the claims presented were the most meritorious claims and the ones that could be supported with evidence, and Petitioner offers no argument or evidence to overcome the presumption that counsel's decision to focus on these five claims was a reasonable strategy.").

In addition, the Court finds that the underlying defaulted claims of ineffective assistance of counsel were not substantial. The record shows that trial counsel did argue provocation and sudden passion throughout the trial, and the jury rejected this by finding Petitioner guilty of first degree murder. At the post-conviction stage, counsel chose the stronger issue and argued that a self-defense instruction should have been given. Further, the record indicates that Petitioner's own testimony acknowledged that he was the aggressor in the confrontation and shooting. In short, Petitioner has failed to demonstrate that that the procedurally defaulted ineffective assistance of counsel claims were substantial and that post-conviction counsel was deficient for failing to raise them. Therefore, Petitioner is unable to show cause for the procedural default on Claims 2 and 5 under *Martinez. Id.* at \*9-10.

With respect to Claim 3 for ineffective assistance of appellate counsel, the Court finds that this claim is procedurally defaulted. Petitioner argues that appellate counsel was ineffective for failing to brief as plain error the trial court's failure to submit a self-defense instruction and modify the sudden passion paragraph in the second degree murder instruction. He further

contends that he can demonstrate cause and prejudice under *Martinez* to overcome this
procedural bar.

The Court notes that under Eighth Circuit law, *Martinez* applies only in limited
circumstances involving a claim of ineffective assistance of trial counsel and does not extend to
claims alleging ineffective assistance of counsel on direct appeal. *Dansby v. Hobbs*, 766 F.3d
809, 833 (8th Cir. 2014). Because Petitioner makes no other argument to overcome the
procedural bar for failure to present this claim to the Missouri courts, Claim 3 must be dismissed
as procedurally defaulted. *See Wilson v. Lewis*, No. 4:14 CV 72 RWS (JMB), 2016 WL
8652296, at \*10 (E.D. Mo. Dec. 30, 2016), *report and recommendation adopted*, No. 4:14 CV
72 RWS, 2017 WL 1196476 (E.D. Mo. Mar. 31, 2017) (finding *Martinez* does not extend to
ineffective assistance of appellate counsel claims and finding petitioner's claims defaulted where
petitioner raised on other factual allegations for cause).

## D. Claim 4

Next, Petitioner claims prosecutorial misconduct in failing to disclose material
exculpatory evidence in violation of *Brady*. Specifically, Petitioner contends that the State
should have disclosed Adams' criminal history and record, as well as a video tape of the
shooting from a television station, of which Petitioner recently learned the prosecution had
subpoenaed. Petitioner avers that the footage shows someone taking a weapon from the Victim's
body immediately following the shooting.

Petitioner appears to be raising a new argument regarding exculpatory evidence which
was not raised in the state court. However, Petitioner's failure to present this new claim to the
Missouri courts constitutes procedural default. *Moore-El v. Luebbers*, 446 F.3d 890, 898 (8th
Cir. 2006). As previously stated, a federal court will consider a defaulted habeas claim "only

17

where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* at 896. In order to assert the fundamental miscarriage of justice exception, "'a petitioner must make a showing of actual innocence.'" *Whitaker v. Steele*, No. 4:11CV327 CDP, 2012 WL 482127, at \*2 (E.D. Mo. Feb. 14, 2012) (quoting *Weeks v. Bowersox,* 119 F.3d 1342, 1350 (8th Cir.1997)).

Petitioner has filed a motion for discovery, asserting that the suppression of this exculpatory evidence under *Brady* constitutes cause sufficient to overcome the procedural bar. However, nothing in Petitioner's Amended Petition, Traverse, or Motion for Discovery gives any indication that the prosecution knew of this information and deliberately withheld it. Therefore, the Court finds that Petitioner is unable to show cause. *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004) (finding petitioner did not show cause where he presented no evidence that the prosecution knew of the information prior to, or during the trial and deliberately withheld such information).

In addition, the Court finds that Petitioner is unable to show actual innocence. Under federal law, the standard for showing actual innocence where a petitioner has defaulted is demanding, and the gateway to adjudication on the merits "should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citations omitted). *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Petitioner has made no such showing. Although he contends that he recently learned of impeachment evidence showing that Adams was on probation during the trial, the Court notes that this is based solely on Petitioner's "reason to believe" such evidence exists and additional discovery is needed to develop this claim.

18

Likewise, Petitioner states that he recently learned of video footage subpoenaed by the prosecution which could have supported his claim of self-defense because it showed someone taking a gun from the Victim's body. Petitioner's "exhibit" indicates that the alleged footage was not Channel 2 footage, and it contains no information that it contains footage supporting a self-defense claim. Further, other than conjecture, nothing in Petitioner's pleadings indicates that the prosecution had this evidence and withheld it from defense counsel. In addition, the program aired in 2009, and Petitioner has failed to demonstrate that he was unable to develop the factual basis for his claims in state court proceedings, despite diligent efforts to do so. *See Moore-El*, 446 F.3d at 900-01 (finding the district court did not abuse its discretion in denying the motion for discovery and a hearing where the new evidence could have been developed in the state court and where the outcome would not likely have been different). In short, with respect to the impeachment evidence regarding Adams' criminal history and the alleged video footage, the Court finds that this is insufficient to demonstrate actual innocence to overcome the procedural bar. *Wilkerson v. Dormire*, No. 4:06CV496 RWS, 2009 WL 605089, at *5 (E.D. Mo. Mar. 5, 2009) ("The evidence merely tends to impeach the testimony of two police officers and buttress Petitioner's defense. This, however, is insufficient to demonstrate actual innocence."). Thus, the Court finds that Petitioner is unable to overcome the procedural bar, and this Court is precluded from addressing Petitioner's *Brady* claims. *Id.*

### E. Claim 7

Petitioner's final claim asserts that the prosecution made improper comments during *voir dire* which wrongly defined the concepts of reasonable doubt and deliberation. The Court notes that Petitioner did not preserve this claim; thus the Missouri Court of Appeals reviewed it for plain error. (Resp't's Ex. E p. 4) The Eighth Circuit Court of Appeals has held that "the state

court's discretionary plain-error review of . . . unpreserved claims cannot excuse [petitioner's] procedural default . . . ." *Clark v. Bertsch*, 780 F.3d 873, 877 (8th Cir. 2015). As such, Petitioner's claim is unreviewable absent a showing of cause and prejudice. *Walters v. Wallace*, No. 4:14 CV 1212 CAS(ACL), 2017 WL 3279089, at \*4 (E.D. Mo. July 6, 2017), *report and recommendation adopted*, No. 4:14-CV-1212 CAS, 2017 WL 3268686 (E.D. Mo. Aug. 1, 2017) (citation omitted). Petitioner has made no such showing, and therefore the Court will dismiss Claim 7 as procedurally defaulted.

## F. Motion for Discovery

Although the Court addressed Petitioner's motion for discovery above, it is worth noting that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). A court may authorize a party to conduct discover upon a showing of good cause. Rule 6(a), Rules Governing § 2254 Cases. To establish good cause, a petitioner must make "specific allegations" that give a court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Newton v. Kemna,* 354 F.3d 776, 783 (8th Cir. 2004) (quoting *Bracy,* 520 U.S. at 904 and 908-09). "The court will not authorize a petitioner to engage in a 'fishing expedition.'" *Rutlin v. Griffith*, No. 4:15CV658 ACL, 2017 WL 4843790, at \*1 (E.D. Mo. Oct. 26, 2017) (quoting *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)).

Here, the Court finds that Petitioner's speculation regarding Adams' criminal records and possible video evidence is insufficient to give the Court reason to believe that discovery would show Petitioner may be able to demonstrate he is entitled to relief. Therefore, his Motion for Discovery will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that that the Petition and Amended Petition of Kent Taylor for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1, 11) are **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Authorize Discovery (ECF No. 23) is **DENIED.**

**IT IS FINALLY ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accordance with this Order is entered on this same date.

Dated this 17th day of September, 2018.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**